UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LOUISIANA INDEPENDENT PHARMACIES ASSOCIATION** | **CASE NO. 2:20-CV-00647** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **EXPRESS SCRIPTS INC.** | **MAGISTRATE JUDGE KAY** |

MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 11] filed under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) by defendant Express Scripts Inc. ("ESI"). Plaintiff Louisiana Independent Pharmacies Association ("LIPA") opposes the motion [doc. 18], and the Louisiana Department of Health ("LDH") has filed an amicus brief [doc. 29] in support of LIPA's position. This matter came before the court for oral argument on February 25, 2021, and the undersigned now issues this ruling.

I.
BACKGROUND

In order to fund Louisiana's share of the state's Medicaid program, the Louisiana legislature enacted a ten-percent provider fee on prescriptions under Louisiana Revised Statute § 46:2625. Under Louisiana Revised Statute § 22:1860.1, termed the "allowable cost provision" by the parties to this matter, benefits plans must reimburse pharmacists for this charge. This suit arises from ESI's position that the allowable cost provision is preempted by federal law for Medicare plans. Doc. 1, pp. 1–3. Accordingly, ESI has refused to reimburse – and the Department of Insurance has refused to enforce – the

allowable cost provision for prescriptions covered by Medicare. *See* doc. 1, att. 3 (Department of Insurance advisory letter). LIPA filed a suit for declaratory judgment in this court, maintaining that there is no preemption and that the fee should be reimbursed on all prescriptions to the Louisiana pharmacists who are required to pay it. *Id.* at 1–14.

ESI now moves to dismiss the suit under Federal Rules of Civil Procedure 12(b)(1) & (6). Under the 12(b)(1) motion, it argues that LIPA's first and second prayers for relief should be dismissed for lack of standing because there is no controversy between ESI and LIPA with respect to those matters. Under the 12(b)(6) motion, it asserts that the third prayer for relief should be dismissed because the allowable costs provisions are preempted by federal Medicare law. Doc. 11, att. 1.

LIPA opposes the motion, arguing that (1) the court has substantial discretion to fashion relief under the Declaratory Judgment Act, (2) the regulation on which ESI relies for preemption is inapplicable, and (3) dismissal is otherwise premature. Doc. 18. In its amicus brief, LDH also provides context on the statutory scheme surrounding the provider fee and allowable cost provision. Doc. 29.

## II.
## LAW & APPLICATION

### A. *Rule 12(b)(1) Motion*

#### 1. *Standard*

A motion filed under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. Standing is an issue of subject matter jurisdiction and one that the party invoking federal jurisdiction bears the burden of establishing. *Barrera-*

*Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). Attacks on subject matter jurisdiction may be either facial (addressing the sufficiency of allegations in the complaint) or factual (challenging the accuracy of facts underpinning the claim of jurisdiction). *King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410, 428 (5th Cir. 2013). Where, as here, the attack is a facial one, the plaintiff's allegations are entitled to a presumption of truth. *Ass'n of Am. Physicians and Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 553 (5th Cir. 2010). However, a legal conclusion disguised as a factual allegation is entitled to no such presumption. *Machete Prods., LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).

### 2. *Application*

In its prayer for relief, LIPA asks the court to: (1) declare whether or not the $.10 per prescription fee mandated by Louisiana Revised Statute § 46:2625 is due on all prescriptions regardless of payor; (2) declare that if the $.10 per prescription fee mandated by § 46:2625 is not due on all prescriptions regardless of payor, that LIPA's member pharmacies not be required to remit this payment on every prescription filled; and (3) declare whether Louisiana Revised Statute 22:1860.1 requires ESI or its agent to reimburse a pharmacist or his agent for fees remitted by the pharmacist or his agent in compliance of § 46:2625, irrespective of the plan in which the patient is a member. Doc. 1, p. 13. ESI moves to dismiss the first and second prayers for relief for lack of standing because they do not implicate a case or controversy between ESI and LIPA. Doc. 11, att. 1, pp. 24–26.

The Declaratory Judgment Act permits a court to "declare the rights and legal relations of any interested party" in a "case of actual controversy within the court's jurisdiction." 28 U.S.C. § 2201(a). The Supreme Court has clarified that a "case of actual

controversy" refers to the types of cases and controversies that are justiciable under Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007). Accordingly, the plaintiff must show "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). To this end, the court must keep in mind that the Declaratory Judgment Act "is designed to permit adjudication of claims only where . . . an adjudication would serve a useful purpose." *Am. Ins. Co. v. Schlumberger Ltd.*, 111 F.3d 893 (5th Cir. 1997). However, the Declaratory Judgment Act should also be construed liberally in order to achieve its remedial purposes so long as the matter in question satisfies the actual case or controversy requirements. *Id.* (citing *Allstate Ins. Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971)).

Here, as ESI notes, the first two prayers for relief do not implicate a controversy between ESI and LIPA. Additionally, LIPA has already challenged this statute in state court with respect to the true adverse parties – the State of Louisiana, through the Department of Insurance and Department of Health. That suit was resolved in a consent judgment issued on April 16, 2018, and attached to the complaint. *See* doc. 1, att. 6. There the parties acknowledged that there was no longer a conflict between them in light of a March 2018 revision and reissuance of a Department of Insurance advisory letter, which directed "all health insurance issuers, health maintenance organizations, third party administrators, group self-insurers, and any other affected persons . . . to comply with all

applicable state and federal laws pertaining to the provider fee authorized by [§ 46:2625]." *Id.* at 1–2.

The court agrees that there is no real conflict between ESI and LIPA with respect to these questions, and that any declaration the court would make on the application of § 46:2625 would be inappropriate in light of the state's absence from the suit and the consent decree. Nevertheless, the third prayer for relief points to a justiciable controversy in this matter and the court has jurisdiction to provide the requested relief. The first and second prayers can be stricken or simply denied, but the court need not resort to parsing elements of the complaint at this stage. Accordingly, the motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) will be denied.

### B. Rule 12(b)(6) Motion

#### 1. Standard

Rule 12(b)(6) allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### 2. *Application*

As noted above, LIPA requests under its third prayer for relief a declaration that the allowable cost provision, Louisiana Revised Statute § 22:1860.1, requires ESI to reimburse LIPA members for fees remitted in compliance with § 46:2625. Doc. 1, p. 13. ESI maintains that this request fails to state a claim on which relief can be granted because the allowable cost provision requires Medicare plans to reimburse the $ .10 fee required under Louisiana law but is preempted by federal law and regulations granting such plans the authority to negotiate reimbursement terms for pharmacies. Doc. 11, att. 1.

#### a. *Preemption approaches*

The Fifth Circuit has not settled on a test for preemption under the Medicare statute. ESI instead puts forth three possible approaches: (1) whether the state law conflicts with Medicare standards (obstacle preemption), (2) whether the state law overlaps with Medicare standards (field preemption), and (3) similar to the broad ERISA preemption test, whether the state law has a "connection with" Medicare plans.

The narrowest of these is the first one, and it turns on the plain meaning of the Medicare Act's preemption provision. Medicare Part D (Prescription Drug Plans), at issue here, incorporates the preemption provisions of Part C (Medicare Advantage). *See Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1148 (9th Cir. 2010) (citing 42 U.S.C. § 1395w–112(g)). Part C, in turn, provides that the standards established thereunder "shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b)(3); *see also* 42 C.F.R. 423.440(a) (2005) (Part D plan

implementing regulations). Accordingly, subject to the licensing and solvency exceptions described above, federal standards established with respect to Part D plans supersede state laws that are inconsistent with them. *Uhm*, 620 F.3d at 1149–50.[1] Under the second approach, Medicare's regulations also preempt any state laws or regulations that overlap with them. *See, e.g.*, *PCMA v. Rutledge*, 891 F.3d 1109, 1113 (8th Cir. 2018) (providing that a state standard is preempted if it acts "with respect to" an area where Congress or CMS has already established standards); *reversed and remanded on other grounds sub nom. Rutledge v. PCMA*, __ U.S. __, 141 S.Ct. 474 (2020); *see also Houston Methodist Hosp. v. Humana Ins. Co.*, 266 F.Supp.3d 939, 946 (S.D. Tex. 2017) (same).

Finally, the broadest approach is field preemption. In support of this argument ESI draws on the preemption test established by the Supreme Court for the Employee Retirement and Income Security Act ("ERISA"), which provides that its standards "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Accordingly, the Supreme Court held that a state law is preempted to the extent that it has a "connection with" or "reference to" an ERISA plan. *E.g.*, *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001). The Court also extended this approach to the Airline Deregulation Act, the preemption provision of which expressly forbids states from enacting regulations "relating to rates, routes, or services of any air carrier . . . ." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–

---

[1] ESI cites this case as an example of the second approach. The Ninth Circuit considered a congressional conference report suggesting broader intent beyond Medicare's preemption provisions after 2003 amendments to those provisions. 620 F.3d at 1149. However, the panel deemed it sufficient to evaluate the claim under the inconsistency standard spelled out in the pre-2003 law. *Id.* at 1149–50.

86 (1992). ESI argues that the test should likewise be extended to Medicare Part D plans, based on similar language in the above preemption provision.[2]

Because the Fifth Circuit has not spoken on the issue, there is little authority to support the application of field preemption under the Medicare statutes, and dismissal under Rule 12(b)(6) is disfavored, the court will only consider preemption under the first two tests: whether the state laws actually conflict with or are inconsistent with the applicable Medicare laws and regulations or whether the state law overlaps with an area already regulated by Medicare.

### b. *Application*

As the Eighth Circuit recently summarized, "Medicare Part D is a comprehensive statutory and regulatory scheme for prescription drugs, which aims to balance cost with access to those drugs. The Part D program funds prescription drug benefits through payments from the Medicare government trust fund, and beneficiaries generally get prescriptions through a Part D network provider. The statute prohibits both federal and state interference in negotiations between Part D sponsors and pharmacies (known as the "non-interference" clause, 42 U.S.C. § 1395w–111(i))." *PCMA*, 891 F.3d at 1113 (internal quotations omitted).

ESI maintains that the allowable cost provision conflicts with the following Medicare statutes and regulations: (1) Congress's intent to promote competition under Part D plans by allowing the plans to negotiate reimbursement terms with pharmacies and other

---

[2] By a notice of supplemental authority, ESI also draws the court's attention to the recent application of field preemption to a Medicare Part C case in *Medicaid and Medicare Advantage Prods. Ass'n of P.R., Inc. v. Emmanuel-Hernandez*, No. 19-1940, ECF No. 131 (D.P.R. Mar. 1, 2021).

network providers (42 U.S.C. § 1395w-111i); (2) Congress's instruction that CMS may not interfere with such negotiations or require a particular formulary or institute a price structure for the reimbursement of covered Part D drugs (*Id.*); (3) the definition of a negotiated price, under CMS regulations, to mean the amount negotiated between the plan sponsor and provider that a network pharmacy "will receive, in total, for a particular drug," 42 C.F.R. § 423.100; and (4) CMS regulations stating that Medicare regulators can only interfere to ensure that the parties' contract terms are "reasonable" as a general matter, 42 C.F.R. § 423.505(b)(18).

The allowable cost provision, on the other hand, requires Part D plans to reimburse pharmacies for the provider fee required under Louisiana law. But, as LIPA points out, § 1395w-111i applies to the Secretary of Health and Human Services and CMS. Likewise, the cited CMS regulations have no direct application beyond these actors. There is no express directive preventing any other party – including state governments and departments of insurance – from imposing price structures or interfering with contract negotiations. Accordingly, these statutes and regulations do not show a basis for conflict preemption. Additionally, the requirement under Louisiana law that a plan sponsor cover this single, uniformly applicable fee is too minimal an incursion on the negotiation of contract terms to show that the state's law overlaps with an area of Medicare regulation.[3] As LIPA points

---

[3] LIPA analogizes the provider fee to a dispensing fee, which is included in the definition of "negotiated price" under § 423.100. It therefore argues that both the Medicare statute and CMS regulations specifically contemplate that, though plan sponsors like ESI have the authority to negotiate prices, the inclusion of dispensing fees thereunder does not conflict with any federal law or regulation. ESI disputes this analogy, noting that dispensing fees are defined as those "incurred at the point of sale [to] pay for costs in excess of the ingredient costs of a covered Part D drug" and include "**only** pharmacy costs associated with ensuring that possession of the appropriate covered Part D drug is transferred to a Part D enrollee." 42 C.F.R. § 423.100 (emphasis added). It further notes that CMS has elsewhere distinguished such fees from taxes, confirming that they are distinct. *See Medicare Program; FY 2015 Hospice Wage Index and*

out, Louisiana can only fund its Medicaid program with provider fees like the one at issue if they are "broad-based" and "uniform." 42 C.F.R. 433.68(D). The ten-cent fee can hardly be considered a price "structure," and ESI has not shown that the minimal Medicare guidance against "interference" with contract negotiations would prohibit the state from making the fee reimbursable under Medicare plans. Accordingly, ESI fails to meet its burden of showing preemption or any other basis for dismissal.

### III.
#### CONCLUSION

For the reasons stated above, both Motions to Dismiss [doc. 11] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 4th day of March, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

*Payment Rate Update*, 79 Fed. Reg. 50452, 50464 (Aug. 22, 2014). The court makes no decision on whether the provider fee may be considered a dispensing fee. Under § 423.100's definition and the statutes cited above, however, there is too little indication that a state may not shift the burden of a provider fee onto a plan sponsor without violating Part D's protections on negotiations.